J-S71005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOSE L. PENA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GRAN PALMA, LLC D/B/A DEJA VU | : | |
| NIGHTCLUB AND DEJA VU | : | |
| RESTAURANT & LOUNGE OF PA, LLC | : | No. 2239 EDA 2019 |
| F/K/A DEJA VU NIGHTCLUB, LLC | : | |
| D/B/A DEJA VU NIGHTCLUB | : | |
| | : | |
| Appellants | : | |

Appeal from the Order Entered July 1, 2019
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2019-C-0101


BEFORE:  BOWES, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 20, 2020**

Gran Palma, LLC d/b/a Deja Vu Nightclub and Deja Vu Restaurant & Lounge of PA, LLC f/k/a Deja Vu Nightclub, LLC d/b/a Deja Vu Nightclub (collectively "Appellants") appeal from the July 1, 2019 order denying their petition to open/strike a default judgment entered in favor of Jose L. Pena. After careful review, we affirm.

This dispute concerns a civil action filed by Mr. Pena seeking a judgment and damages against Appellants under a theory of negligence.  Mr. Pena alleged that on February 24, 2017, he was a "business invitee" at Appellants' place of business, which is located at 343-345 Hamilton Street, Allentown, Pennsylvania.  *See* Complaint, 1/9/19, at ¶¶ 6-8.  Mr. Pena averred that he was "brutally and savagely assaulted" by individuals that he recognized as

"employees" and "patrons" of Appellants. *Id*. at ¶¶ 9-13. Mr. Pena claimed that, as a result of the beating, he sustained severe injuries,[1] loss of income, and various other damages. Specifically, he claimed that Appellants had violated their "non-delegable duty to protect their patrons and insure the presence of qualified, mature and conscientious security" for the protection of, *inter alia*, Mr. Pena. *Id*. at ¶¶ 7-8, 18-19, 24, 37.

Mr. Pena's counsel first contacted Appellants on April 6, 2017, by sending a certified letter notifying them that Mr. Pena had retained counsel and advising them to preserve any "surveillance video" or "incident report" related to Mr. Pena's claims. *See* Response to Petition to Open/Strike, 4/8/19, at Exhibit B. The certified mail receipt indicates that the letter was successfully delivered on April 20, 2017. *Id*. Receiving no response, Mr. Pena's counsel sent a follow-up letter on July 6, 2017.

Mr. Pena filed his complaint on January 9, 2019. On January 22, 2019, a deputy of the Lehigh County Sheriff served a copy of Mr. Pena's complaint at Appellants' place of business,[2] which was accepted by an individual named

---

[1] Mr. Pena averred that he sustained a "closed displaced bicondylar fracture of the left tibia requiring external fixation and fasciotomy with popliteal repair and skin granting, left popliteal artery injury, left leg pain, leg edema, tibial fracture, acute kidney injury, compartment syndrome of left lower extremity, laceration of face, abrasion of right upper extremity, [and a] closed head injury with loss of consciousness." *See* Complaint, 1/9/19, at ¶ 25. It is unclear what precipitated the underlying altercation.

[2] Separate certified copies of the complaint were sent to each Appellant.

Osiris Guzman[3] who was identified as the "person in charge." Return of Service, 1/22/19. On February 6, 2019, Mr. Pena's counsel filed an affidavit of service. On February 11, 2019, Mr. Pena sent notice of his intent to enter a default judgment against Appellants. *See* Notice of Intent to Enter Default Judgment, 2/11/19, at unnumbered 1. Mr. Pena sent this notice via certified mail to Appellants' place of business, where it was delivered and signed-for by an unidentified individual.[4] The USPS tracking website indicates that the notice was delivered to Appellants' place of business on February 13, 2019. *See* Response to Petition to Open/Strike, 4/8/19, at Exhibit E.

On February 27, 2019, Mr. Pena filed a praecipe for default judgment based upon Appellants' failure to file a responsive pleading. *See* Praecipe for Judgment by Default, 2/27/19, at unnumbered 1. That same day, the Lehigh County Prothonotary sent notice of the default to judgment to Appellants at the same place of business. *See* Notice of Filing Judgment, 2/27/19, at unnumbered 1. Furthermore, Mr. Pena sent the same notice via certified mail, which the USPS tracking website confirms was delivered to Appellants' place

---

[3] In an affidavit, Mr. Guzman identified himself as a "Member" of the corporate entities operating the nightclub and named in Mr. Pena's lawsuit, *i.e.*, Appellants. *See* Petition to Open/Strike Default Judgment, 4/3/19, at Exhibit B. Appellants have offered no other description of the nature or discussion of the membership of these corporate entities. *Id*. at ¶ 4 (stating only that Mr. Guzman's mother, Anna Valentin, is "involved in the family business.").

[4] In his affidavit, Mr. Guzman averred that "[t]he signature on the certified mail card for both of [Appellants] is unknown to me, is not a relative or acquaintance nor is it an employee of the subject nightclub." *See* Petition to Open/Strike Default Judgment, 4/3/19, at Exhibit B. Mr. Guzman's mother, Anna Valentin, submitted an affidavit stating the same thing. *Id*.

of business on March 2, 2019. *See* Response to Petition to Open/Strike, 4/8/19, at Exhibit G. On March 19, 2019, the trial court entered a scheduling order fixing a date for a damages hearing with respect to Mr. Pena's default judgment. Notice of this scheduling order was sent to Appellants at the same address.

On April 3, 2019, counsel for Appellants entered his appearance and filed a petition to open/strike the default judgment. In that filing, Appellants confirmed that service of Mr. Pena's complaint was accepted by Mr. Guzman on January 22, 2019. *See* Petition to Open/Strike Default Judgment, 4/3/19, at ¶¶ 2-3, Exhibit B. Mr. Guzman submitted an affidavit stating that he delivered the complaint to his mother, Anna Valentin, who is the president of both the corporate entities named in Mr. Pena's lawsuit. *Id*. at Exhibit B. Ms. Valentin also submitted an affidavit, stating that she held the complaint for several days to "review [her] personal records." *Id*. On January 25, 2019, she delivered it to Appellants' insurance agent, the Teets Insurance Group in Kutztown, Pennsylvania.[5] *Id*.

_____

[5] In particular, Appellants hold "liquor liability and commercial general liability insurance" policies from Teets Insurance Group. *See* Petition to Open/Strike Default Judgment, 4/3/19, at ¶ 4. In the petition to open/strike, Appellants averred that they "believed" that the insurance company "thereafter submitted the Complaint to the appropriate insurance carriers for review and further action." *Id*. at ¶ 5. However, Mr. Guzman's affidavit stated that at some point before Appellants submitted the petition to open/strike, the insurance company advised Appellants "that insurance coverage would not be provided due to a variety of factors regarding the type of coverages we had paid for [versus] the allegations made in the Complaint." *Id*. at Exhibit B.

Both Mr. Guzman and Ms. Valentin stated that they had no notice of the default judgment until some point in March 2019, when they received scheduling notice of the damages hearing. *Id*. In addition to these affidavits, Appellants also attached an answer and new matter. *Id*. at Exhibit A. Appellants asserted that the "attack" described by Mr. Pena "occurred at least one (1) block away from [Appellants'] facility and as a result, [Appellants] had no control over the intentional, purposeful and/or negligent acts of the unidentified alleged assailant(s)." *Id*.

Mr. Pena filed a response that included, *inter alia*, copies of the correspondence described *supra*. Mr. Pena averred that he had followed all of the necessary procedural requirements for the entry of a default judgment. On July 1, 2019, the trial court denied Appellants' petition. Appellants filed a timely notice of appeal, and both Appellants and the trial court timely complied with their obligations under Pa.R.A.P. 1925. The trial court relied upon the reasoning set forth in its July 1, 2019 memorandum opinion.

Appellants present a single issue for our consideration:

Whether the trial court abused its discretion and/or committed an error of law in ruling against [Appellants] where [they] met all three required prongs to open the default judgment especially where, as here, the trial court took no testimony, made no findings of credibility, and ignored unrefuted statements contained in affidavits submitted by [Appellants] in support of the motion to open?

Appellants' brief at 5.

At the outset, we note that "[a] petition to strike a judgment and a petition to open a judgment are separate and distinct remedies and [are] not interchangeable." ***U.S. Bank Nat. Assoc. for Penna. Housing Finance Agency v. Watters***, 163 A.3d 1019, 1027 (Pa.Super. 2017). Although Appellants initially sought both remedies in the trial court, their claim before this Court is confined to an argument in favor of opening the default judgment below, which is "an appeal to the equitable powers of the court." ***Id***. at 1028. Our standard of review in this context is well-established: "The decision to grant or deny a petition to open a default judgment is within the sound discretion of the trial court, and we will not overturn that decision absent a manifest abuse of discretion or error of law." ***Id***.

"In general, a default judgment may be opened when the moving party establishes three requirements: (1) a prompt filing of a petition to open the default judgment; (2) a meritorious defense; and (3) a reasonable excuse or explanation for its failure to file a responsive pleading." ***Smith v. Morrell Beer Distributors, Inc.***, 29 A.3d 23, 25 (Pa.Super. 2011). "If a petition to open a default judgment fails to fulfill any one prong of this test, then the petition must be denied." ***Watters***, ***supra*** at 1028 (citing ***Myers v. Wells Fargo Bank, N.A.***, 986 A.2d 171, 178 (Pa.Super. 2009)).

We first consider whether the trial court abused its discretion in determining that Appellants had not presented a reasonable excuse or explanation for the failure to file a responsive pleading prior to default. ***See***,

*e.g.*, *McCoy v. Public Acceptance Corp.*, 305 A.2d 698, 700 (Pa. 1973) (holding that a defendant's failure to adequately explain failure to answer, alone, justified trial court's refusal to open a judgment).

"Whether an excuse is legitimate is not easily answered and depends upon the specific circumstances of the case." *Seeger v. First Union Nat. Bank*, 836 A.2d 163, 166 (Pa.Super. 2003). In this context, "mere allegations of negligence or mistake, absent more, will not suffice to justify a failure to appear or answer a complaint so as to warrant granting relief from a default judgment." *Duckson v. Wee Wheelers, Inc.*, 620 A.2d 1206, 1210 (Pa.Super. 1993). Rather, "[e]xcusable negligence must establish an oversight rather than a deliberate decision not to defend." *Seeger*, *supra* at 166 (quoting *Duckson*, *supra* at 1211). Our Supreme Court's jurisprudence suggests that the proper touchstone in this arena is a "justifiable excuse" that indicates that "the defendant has been without fault." *McFarland v. Whitham*, 544 A.2d 929, 931 (Pa. 1988).

The trial court's discussion of this portion of Appellants' claim was succinct but persuasive:

> As to the assertion that the default was the result of the [Appellants'] insurance carriers[6] reviewing the claim, this court does not find that such [an] allegation absolves the [Appellants]

---

[6] While it appears that Appellants obtained insurance coverage through the Teets Insurance Group, the record indicates that Appellants had coverage from multiple insurers that potentially related to Mr. Pena's lawsuit. For the sake of our analysis, we will assume that Appellants' delivery of Mr. Pena's complaint to the Teets Insurance Group was sufficient to inform their insurers.

of their responsibility in this case. Neither insurance carrier ever informed [Appellants] that it would be protecting [Appellants'] interests, and, in fact, both the liquor liability insurance carrier and the commercial general liability carrier rejected the claim, albeit after the default judgment was entered. Accordingly, the fact that the insurance carriers were reviewing the claim does not provide a reasonable excuse or explanation for the default in this case.

Trial Court Opinion, 7/1/19, at 7. Appellants argue that the trial court has abused its discretion because Appellants transmitted a copy of Mr. Pena's complaint to the Teets Insurance Group in January 2019, which they claim should fully explain their failure to file a responsive pleading in a timely fashion. **See** Appellants' brief at 22-24. We disagree.

This Court has previously adjudicated claims stemming from allegations that an insurance carrier's actions have resulted in a default judgment being issued against a defendant-insured. "Generally speaking, a default attributable to a defendant's justifiable belief that his legal interests are being protected by his insurance company is excusable." **Autologic Inc. v. Cristinzio Movers**, 481 A.2d 1362, 1363 (Pa.Super. 1984). In addition to being justifiable, there must also be some mistake or error that is attributable to the insurance company and which results in a default judgment. **See Balk v. Ford Motor Co**., 285 A.2d 128, 131-32 (Pa. 1971) (collecting cases); **see also Duckson**, **supra** at 1209-10 (finding legitimate excuse where insurance company misassigned case to multiple attorneys during year-end holidays).

Instantly, Appellants have not identified any actual or alleged mishandling of the claim by their respective insurance agent and/or carriers.

- 8 -

There is no allegation that papers were mislaid, or that a clerical mishap occurred. Rather, Appellants merely sent a copy of Mr. Pena's complaint to their insurance agent, and then sat idle for three months awaiting some manner of coverage determination. **See** Petition to Open/Strike Default Judgment, 4/3/19, at Exhibit B. Overall, Appellants' non-response to Mr. Pena's complaint appears to be the result of a deliberate decision to await the conclusion of the insurance company's coverage review process before taking further action. **Cf. McFarland**, **supra** at 931; **Seeger**, **supra** at 166.

On this point, we find the case of **Bethlehem Apparatus Co., Inc. v. H.N. Crowder, Jr., Co.**, 364 A.2d 358 (Pa.Super. 1976), instructive.[7] In **Bethlehem**, an insured received service of a complaint naming it as a defendant in a breach of contract action. The insured alerted his insurance carrier of the receipt of the complaint, explained the circumstances, and asserted his belief that the matter was covered by his liability insurance. **Id**. at 360. The insured received no response from the carrier, and took no action to defend against the action until it learned of the entry of a default judgment. **Id**. at 359-60. This inaction proved dispositive, as this Court explained:

> Thus, although the appellant realized that there existed some
> possibility that the insurance carrier would not be responsible for

---

[7] The reasoning in **Bethelhem Apparatus Co., Inc. v. H.N. Crowder, Jr., Co.**, 364 A.2d 358 (Pa.Super. 1976), has been reaffirmed multiple times in the intervening years. **See Baskerville v. Philadelphia Newspapers, Inc.**, 419 A.2d 1355, 1357 (Pa.Super. 1980); **Autologic Inc. v. Cristinzio Movers**, 481 A.2d 1362, 1363 (Pa.Super. 1984); **Duckson v. Wee Wheelers, Inc.**, 620 A.2d 1206, 1210 (Pa.Super. 1993).

its defense and that, in any event, a timely response was necessary, it failed to inquire as to the status of its claim or even to seek any assurances from the insurance carrier that it was being represented.

*Id*. at 360. The insured in **Bethlehem** offered no explanation or information regarding why the insurance carrier failed to mount a defense on its behalf. Accordingly, this Court concluded that "the record clearly shows that the [insured] has not acted in a manner that would have enabled it to rely justifiably upon legal representation by the insurance carrier." **Id**.

As in **Bethlehem**, the certified record in this case does not support a conclusion that Appellants have "acted in a manner which would reasonably result in the protection of [their] legal interests." **Id**. Instead, Appellants acted in a dilatory fashion by neglecting to follow-up with their insurance representatives to ensure that a timely response to Mr. Pena's complaint was effectuated, or to confirm the existence and extent of coverage. As such, this "invalidates" the claim that Appellants' justifiably relied upon their insurance carrier to protect their legal interests. **Id**.

Based on the foregoing discussion, we discern no abuse of discretion in the trial court's conclusion that Appellants failed to offer a reasonable explanation for the failure to respond to Mr. Pena's complaint. Having confirmed that Appellants failed to proffer a reasonable explanation, we may affirm the trial court on that ground, alone. **Accord McCoy**, **supra** at 700; **Watters**, **supra** at 1028. Thus, Appellants are not entitled to relief.

Order affirmed. Case remanded. Jurisdiction relinquished.

- 10 -

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 5/20/2020*